# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERALD ALEX UNGERER, | CIVIL NO: 1:20-CV-02216 |
| Plaintiff, | |
| v. | |
| | (Magistrate Judge Schwab) |
| MICHAEL ESPOSITO, *et al.*, | |
| Defendants. | |

## ORDER
March 26, 2021

## I. Introduction.

The plaintiff, Jerald Alex Ungerer, asserts claims under 42 U.S.C. § 1983 based on one piece of his legal mail being misdelivered to another inmate. After screening the complaint, we conclude that the complaint fails to state a claim upon which relief can be granted. But we will grant Ungerer leave to file an amended complaint. We will also deny Ungerer's motion for the appointment of counsel.

## II. Background.

Ungerer began this action by filing a complaint naming as defendants Michael Esposito, a correctional officer at the Lackawanna County Prison ("LCP"); Timothy Betti, the Warden of the LCP; Colleen Orzel, a deputy warden of the LCP; and William Shanley, also a deputy warden of the LCP. *See* doc. 1.

Ungerer alleges that on September 21, 2020, while he was a pretrial detainee at the LCP, defendant Esposito delivered Ungerer's legal mail to another inmate. More specifically, Ungerer alleges that his attorney sent him confidential legal mail about his case. Defendant Esposito opened that mail and handed it to inmate Michael Singleton in another cell. Assuming that the mail was his, Singleton read the mail, which contained confidential information. According to Ungerer, Esposito did not follow proper protocol because if he had, he would have opened the legal mail in his presence and handed him the mail instead of handing it to Singleton.

Ungerer contends that defendant Esposito's actions resulted in a breach of his federal right to attorney-client confidentiality. Ungerer also asserts that such a breach can have negative effects on his case and can have negative effects on him as it can put him in danger of his confidential information being spread to other inmates. Ungerer states that he currently does not "know the full extent of damages that this has the potential to cause to my case, or my person(s)." *Id*. at 5. Ungerer seeks monetary damages as well as an order requiring that defendant Esposito and other officials be properly trained so that what happened with his mail does not happen again.

Ungerer filed an application to proceed *in forma pauperis*, which we granted. He has also filed a motion for the appointment of counsel.

For the reasons set forth below, we conclude that the amended complaint fails to state a claim upon which relief can be granted. For that reason, we will deny Ungerer's motion for the appointment of counsel. We will, however, grant Ungerer leave to file an amended complaint.

### III. Screening of *In Forma Pauperis* Complaints—Standard of Review.

This court has a statutory obligation to conduct a preliminary review of complaints brought by prisoners given leave to proceed *in forma pauperis* in cases that seek redress against government officials. Specifically, the court must review the complaint in accordance with 28 U.S.C. § 1915A, which provides, in pertinent part:

> **(a) Screening.** The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal.** On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint
>     **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>     **(2)** seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A(b)(1), the court must assess whether a complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the

3

language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more

than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint states a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where

> there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**IV. Discussion.**

We construe Ungerer's complaint as asserting 42 U.S.C. §1983 claims. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under §1983, the plaintiff must establish a deprivation of a federally protected right and that this

deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

"A prisoner's ability to receive legal mail without interference—including the threat of interference due to the mail being opened outside of his presence—is protected by two different constitutional rights: the right to free speech under the First Amendment and the right of access to courts." *Williams v. Lackawanna Cty. Prison*, No. 1:13-CV-00849, 2015 WL 4729438, at *4 (M.D. Pa. Aug. 10, 2015). For the reasons that follow, the complaint fails to state either a First Amendment free speech claim upon which relief can be granted or an access-to-the-courts claim upon which relief can be granted.

**A. The complaint fails to state a First Amendment free speech claim upon which relief can be granted.**

Because a one-time misdelivery of legal mail without more does not violate the right to free speech, the complaint fails to state a First Amendment free speech claim upon which relief can be granted.

The First Amendment provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. By incorporation through the Fourteenth Amendment, the Free Speech Clause of the First Amendment applies to the states. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). "[I]mprisonment does not automatically deprive a

7

prisoner of certain important constitutional protections, including those of the First Amendment." *Beard v. Banks*, 548 U.S. 521, 528 (2006). "But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." *Id*. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

"[P]risoners do not forfeit their First Amendment rights to use of the mails." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). And a "pattern and practice" or an "explicit policy, of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). "[A] pattern and practice" of opening legal mail outside an inmate's presence "chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation . . . ." *Bieregu*, 59 F.3d at 1452. "The practice deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications." *Jones*, 461 F.3d at 359. "This is so because 'the only way to ensure that mail is not read when opened . . .

is to require that it be done in the presence of the inmate to whom it is addressed.'" *Id.* (quoting *Bieregu*, 59 F.3d at 1456).

Although a pattern and practice of interference with the proper handling of legal mail may violate the First Amendment, "isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation." *Martin v. Sec'y of Corr.*, No. 3:16-CV-2060, 2021 WL 832644, at *5 (M.D. Pa. Mar. 4, 2021) (citing cases), *appeal docketed*, No. 21-1522 (3d Cir. Mar. 19, 2021); *see also Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir. 2020) (stating that "while a 'pattern or practice' of opening legal mail outside the presence of an inmate is sufficient to state a First Amendment violation, . . . a single instance is usually not enough" (citations and footnote omitted)).

Here, Ungerer has alleged a single incident of his legal mail being given to another prisoner, and he has not alleged any facts to suggest that this was done for an improper purpose. Thus, the complaint fails to state a First Amendment free speech claim upon which relief can be granted.

### B. The complaint fails to state an access-to-the-courts claim upon which relief can be granted.

Because Ungerer has not alleged an actual injury, the complaint does not state a claim of a denial of access to the courts upon which relief can be granted.

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  There are two general categories of actionable federal claims based upon an alleged denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

The first category is forward-looking claims. *Id.*  The essence of such a claim is that official action is frustrating the plaintiff in preparing or filing a legal action at the present time. *Id.*  The opportunity to litigate "has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

The second category is backward-looking claims. *Id.* at 413–14.  Such a claim does not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted). "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

The ultimate justification for recognizing each kind of access claim is the same. *Id.*  "Whether an access claim turns on a litigating opportunity yet to be

gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15.  The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415.  Therefore, a plaintiff must establish an actual injury by identifying a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.*  The underlying cause of action, whether anticipated or lost, is an element of the access claim. *Id.*

In the prison setting, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  Rather, in the prison setting, actual injury is the loss of, or inability to pursue, a nonfrivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. *Id.* at 354–55.  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. at 355 (italics in original).

To state an access-to-the-courts claim upon which relief can be granted based on the mishandling of legal mail, a prisoner must allege an actual injury. *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997).  But here, Ungerer does not allege that because his legal mail was delivered to and read by another inmate, he

11

lost or was unable to pursue a nonfrivolous claim relating to his conviction or to a challenge to his conditions of confinement. Thus, Ungerer fails to allege that he was actually injured by defendant Esposito's misdelivery of his legal mail. Accordingly, the complaint fails to state an access-to-the-courts claim upon which relief can be granted.

**C. The complaint fails to state a claim upon which relief can be granted against defendants Betti, Orzel, and Shanley for the additional reason that it does not allege that these defendants were personally involved in the misdelivery of Ungerer's legal mail.**

For the reasons set forth above, the complaint fails to state either a First Amendment free speech claim or an access-to-the-courts claim upon which relief can be granted. The complaint also fails to state a claim upon which relief can be granted against defendants Betti, Orzel, and Shanley for the additional reason that it does not allege that these defendants were personally involved in the alleged misdelivery of his legal mail.

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. Thus, respondeat superior cannot form the basis of liability. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018). In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). And so, a constitutional

deprivation cannot be premised merely on the fact that the defendant was a supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104–05 (3d Cir. 2008). Rather, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

"Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

"A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Id.* at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

Here, the complaint does not contain any factual allegations regarding defendants Betti, Orzel, or Shanley. Thus, the complaint does not allege that these defendants were personally involved in the alleged misdelivery of his legal mail. In addition to the reasons discussed above, the complaint fails to state a claim upon

which relief can be granted against defendants Betti, Orzel, and Shanley because it does not allege the personal involvement of these defendants.

**D. Leave to Amend.**

Before dismissing a complaint under the screening provision of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). Here, given the liberal standard for leave to amend, we will give Ungerer leave to file an amended complaint to attempt to state a claim upon which relief can be granted.[1]

---

[1] Any amended complaint must be titled as an amended complaint and must contain the docket number of this case. Fed. R. Civ. P. 10(a). "The plaintiff is advised that any amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). "It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Id*. "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id*. In other words, if an amended complaint is filed, the original complaint will have no role in the future litigation of this case. Any amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure, including the requirements that the complaint contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(3). Further, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And to the extent it would promote clarity

## V. Motion for Counsel.

Ungerer filed a motion for the appointment of counsel. "Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak,* 294 F.3d 492, 498 (3d Cir. 2002). Yet 28 U.S.C. § 1915(e)(1) provides that the court may request an attorney to represent an indigent litigant in a civil case. While the court has broad discretion to request an attorney to represent an indigent civil litigant, *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993), it may not require an unwilling attorney to accept an appointment in a civil case, *Mallard v. U.S. District Court*, 490 U.S. 296, 310 (1989).

"Appointing counsel for an indigent civil litigant is 'usually only granted upon a showing of <u>special</u> <u>circumstances</u> indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case.'" *Parkell v. Danberg*, 833 F.3d 313, 340 (3d Cir. 2016) (emphasis in original) (quoting *Smith–Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984)). But "counsel should be appointed where an indigent plaintiff with a potentially meritorious claim is not fully able to prosecute his or her own case in

---

to do so, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id*.

light of the overall complexity of the case." *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019).

The United States Court of Appeals for the Third Circuit has "outlined a two-step process" that the court should follow when deciding whether to ask an attorney if he or she will accept the responsibility of representing a *pro se* plaintiff. *Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019). First, as a threshold inquiry, the court must consider whether the plaintiff's case has some arguable merit in fact and law. *Montgomery,* 294 F.3d at 498–99. Second, if the plaintiff overcomes this threshold hurdle, the court should consider other factors including: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the degree to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his or her own behalf. *Parham v. Johnson,* 126 F.3d 454, 457 (3d Cir. 1997). This list is not meant to be exhaustive. *Tabron,* 6 F.3d at 157; *see also Houser*, 927 F.3d at 700 ("We have always emphasized that the Tabron factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress. They are not exhaustive, nor are they each always

essential."). Rather, the court must determine on a case-by-case basis whether the appointment of counsel is warranted. *Tabron,* 6 F.3d at 158.

Here, because, as set forth above, the complaint fails to state a claim upon which relief can be granted, we cannot say that the case has some arguable merit in fact and law. Thus, Ungerer does not meet the threshold requirement for the appointment of counsel. Accordingly, we will deny his motion for the appointment of counsel.

**VI. Order.**

For the foregoing reasons, **IT IS ORDERED** that Ungerer is **GRANTED** leave to file an amended complaint within 28 days of the date of this Order. If Ungerer fails to file an amended complaint, we will recommend that this case be dismissed. **IT IS FURTHER ORDERED** that Ungerer's motion (*doc. 5*) for the appointment of counsel is **DENIED**.

*S/Susan E. Schwab*  
Susan E. Schwab  
United States Magistrate Judge